UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**NORMAN WHITE,**

    **Plaintiff,**

v.                                     Case No.  8:13-cv-2780-T-30AEP

**PROGRESSIVE SELECT INSURANCE COMPANY and HUGHES INSURANCE SERVICES, INC.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff Norman White's Motion to Remand (Dkt. 15) and Defendant Progressive Select Insurance Company's Response in Opposition (Dkt. 17). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be granted and this action remanded to the Twelfth Judicial Circuit, in and for Manatee County, Florida.

## BACKGROUND

On September 5, 2013, Plaintiff Norman White, a Florida citizen, filed the instant action against Defendant Progressive Select Insurance Company, an Ohio citizen, in state court. The initial complaint alleged five causes of action under Florida law based on Progressive's refusal to provide White uninsured/underinsured motorist coverage. Specifically, White alleges that Progressive fraudulently obtained and/or falsified an

uninsured/underinsured motorist rejection form pertaining to the subject insurance policy. White learned of this purported rejection form after he was involved in a motorcycle accident with a third party; the third party's insurance coverage was not adequate to cover White's damages. White alleges that the subject policy provided stacked uninsured/underinsured motorist coverage in the amount of $100,000.

On October 28, 2013, Progressive accepted service of the complaint and immediately filed a notice of removal (dated that same day) that resulted in the removal of the state-court action to this Court on October 29, 2013. Progressive's removal was premised on diversity jurisdiction.

On November 6, 2013, White amended his complaint under Fed. R. Civ. P. 15(a). In pertinent part, the amended complaint added Defendant Hughes Insurance Services, Inc., an insurance agent, alleging negligence and fraud claims. Notably, Hughes is a Florida citizen. Accordingly, Hughes' joinder destroyed complete diversity.

On November 19, 2013, Progressive filed a motion for more definite statement. Progressive argued that the amended complaint was an improper shotgun pleading. Progressive did not move to strike Hughes as a party, or otherwise reference Hughes' joinder as a Defendant.

On November 20, 2013, the Court granted Progressive's motion to the extent that the Court agreed that the amended complaint needed to be re-pled.

On December 4, 2013, White amended his complaint pursuant to the Court's Order.

On December 24, 2013, White filed the instant motion to remand based on the lack of complete diversity.

On January 8, 2014, Progressive filed its second motion to dismiss. Progressive's motion to dismiss argued, in pertinent part, that Hughes was an improper party and that the claims against Hughes otherwise failed under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b).

On January 10, 2014, Progressive filed its response to White's motion to remand. Progressive's response incorporated its motion to dismiss arguments to the extent that they related to Hughes.

For the reasons stated below, the Court concludes that White's addition of Hughes as a party Defendant was not intended to destroy diversity and the equities as a whole weigh in favor of permitting Hughes' joinder. The Court also concludes that the fraud claim against Hughes is "possible" under a fraudulent joinder analysis. Accordingly, remand is warranted under 28 U.S.C. § 1447 (e).

## DISCUSSION

### I.    Applicable Law

Progressive removed the state-court action under diversity of citizenship. In order to establish diversity jurisdiction at the time of removal, Progressive must show complete diversity of citizenship, and that the matter in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1261 (11th Cir. 2000). Complete

diversity does not exist if a single plaintiff is a citizen of the same state as a single defendant. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 553 (2005).

Amendment of a complaint post-removal is analyzed under 28 U.S.C. § 1447(e). *See Ingram v. CSX Transp., Inc.,* 146 F.3d 858, 862 (11th Cir. 1998). Under section 1447(e): "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." *Id.* The Eleventh Circuit has held that a district court has only two options: (1) deny the requested joinder, or (2) allow the joinder and remand the case to state court. *See Ingram*, 146 F.3d at 862. Thus, the issue of whether to allow the joinder of a non-diverse party defendant post-removal "is left to the discretion of the district court ..." *Dean v. Barber,* 951 F.2d 1210, 1215 (11th Cir. 1992).

"In exercising discretion to deny joinder, or to permit joinder and remand the case to state court, § 1447(e) requires an evaluation of the prejudice to the parties." *Mehta v. New York Life Ins. Co.,* No. 8:09-cv-59, 2009 WL 2252270, at *3 (M.D. Fla. July 28, 2009). The district court should consider the following factors: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for the amendment; (3) whether the plaintiff will be significantly injured if the amendment is not allowed; and (4) any other factors bearing on the equities." *Id.* (citing *Hensgens v. Deere & Co.,* 833 F.3d 1179, 1182 (5th Cir.1987)).

The district court should also analyze whether the joinder of the non-diverse party is fraudulent. *See Bechtelheimer v. Cont'l Airlines, Inc.,* 776 F. Supp. 2d 1319, 1321 (M.D.

Fla. 2011) (citing *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998) ("Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.")).

There are three situations where joinder may be deemed fraudulent: "(1) when there is no possibility the plaintiff can prove a cause of action against the non-diverse defendant, (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts, and (3) when a diverse defendant is joined with a non-diverse defendant to whom there is no joint, several, or alternative liability and where the claims against the diverse and non-diverse defendants have no real connection to each other." *In re Accutane Products Liability*, No. 8:04-MD-2523-T-30TBM, 2012 WL 3194951, at *2 (M.D. Fla. July 31, 2012) (Moody, J.) (citing *Triggs*, 154 F.3d at 1287).

In evaluating the first situation, i.e., whether the plaintiff can prove the cause of action against the non-diverse defendant, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the [non-diverse] defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as recognized in Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs,* 154 F.3d at 1287 (emphasis in original). The potential for legal liability "must be reasonable, not merely theoretical." *Legg v. Wyeth,* 428

F.3d 1317, 1325 n.5 (11th Cir. 2005) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002)).  In considering *possible* state law claims, possible must mean "more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." *Id.*

**II.     Analysis**

    A.     <u>Whether the purpose of the amendment is to defeat federal jurisdiction</u>.

Progressive argues that the timing of White's amendment demonstrates that the purpose was to defeat jurisdiction.  The Court disagrees.  White adequately explains why he waited until November 6, 2013, to amend his complaint to add Hughes: Progressive responded to White's civil remedy notice on October 30, 2013, and admitted, in part, that a representative of Hughes faxed to Progressive the uninsured/underinsured rejection form. Upon receiving that information, (that confirmed White's belief that Hughes was involved in the transmission of the fraudulent or forged form), White amended his complaint to assert negligence and fraud claims against Hughes.  Other than to speculate about the timing of events, Progressive does not point to any evidence that disputes White's reasoning.

Notably, it also weighs heavily in White's favor that White filed the amended complaint *before* Progressive filed a response to the original complaint.  It is also significant that Progressive removed the action *the same day* Progressive accepted service of the complaint.  In other words, if Progressive had not immediately removed the action, White's amendment would have occurred pre-removal, rendering the issues discussed herein moot.

In sum, the Court is not persuaded that the purpose of White's joinder of Hughes was to defeat federal jurisdiction.

B.  <u>Whether White has been dilatory in asking for the amendment</u>.[1]

There is no evidence that White's motives were dilatory.

C.  <u>Whether White will be significantly injured if the amendment is not allowed</u>.

If the Court does not permit the joinder of Hughes, White will have to file a separate state-court action against Hughes. This injury may not be significant, but it does weigh in favor of permitting amendment because dual lawsuits are more costly, less efficient, and subject the parties to the potential of inconsistent outcomes. Moreover, the fraud claim against Hughes is intertwined with the claims against Progressive.

D.  <u>Any other factors bearing on the equities</u>.

Other equitable factors weigh in favor of permitting Hughes' joinder. This case is in its infancy. Any remand at this early juncture will have little prejudicial effect on Progressive. Indeed, the parties have not submitted their joint case management report; thus, there are no scheduling deadlines at this time. Also, as stated above, remand prevents the possibility of having two simultaneous lawsuits.

---

[1] Notably, White amended the complaint as a matter of right under Fed. R. Civ. P. 15(a). And Progressive did not object to the amendment at that time. Therefore, there is an issue that the Court was deprived of its jurisdiction at the time of the first amendment (on November 6, 2013). However, the Court will analyze whether the amendment was proper under section 1447(e), which assumes that the plaintiff filed a motion to amend the complaint to add the non-diverse party defendant.

In sum, the Court finds that the factors and the balance of the equities weigh in favor of permitting Hughes' joinder.

  E. <u>Whether Hughes' joinder was fraudulent</u>.

As stated above, Progressive argues Hughes' joinder was fraudulent under the first fraudulent joinder scenario, that is, that there is no possibility that the claims state a cause of action. Progressive is correct with respect to the negligence claim because said claim is premature. *See Looney v. Protective Life Ins. Co.*, No. 8:07-cv-1020-T-17TBM, 2007 WL 2669190, at *4 (M.D. Fla. Sep. 6, 2007) (noting that an insured's cause of action against an agent for negligence does not accrue until after the court makes a coverage determination under the subject policy and the proceedings against the insurer are final).

But Progressive's arguments with respect to the fraud claim are unpersuasive. Progressive spends a lot of time arguing the merits of the fraud claim. Under a fraudulent joinder analysis, whether the fraud claim will ultimately succeed is irrelevant. The fraud claim just has to be "possible". And, although the Court makes no determination as to the pleading adequacy of the fraud claim (under Rule 12(b)(6) and Rule 9(b)), a review of the claim demonstrates that it is possible.

White alleges that a representative of Hughes faxed a fraudulent rejection form to Progressive. White states that he was unaware that said form was faxed. He thought he had uninsured/underinsured coverage under the subject policy. He also alleges that Progressive had a practice of fraudulently denying uninsured/underinsured coverage and Hughes

knowingly worked in concert with Progressive, or as Progressive's agent, to effect this scheme. These allegations support a possible fraud claim under the applicable law.

### III. Conclusion

In conclusion, after applying an analysis of the relevant factors under section 1447(e), and considering whether fraudulent joinder is applicable, the Court concludes that White's amendment to add non-diverse party defendant Hughes was permissible. Thus, this action must be remanded due to the lack of complete diversity. *See Ingram*, 146 F.3d at 862.

It is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiff Norman White's Motion to Remand (Dkt. 15) is granted.

2. The Clerk of Court is directed to remand this action to the Twelfth Judicial Circuit, in and for Manatee County, Florida, and provide that court with a copy of this Order.

3. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on January 15, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2013\13-cv-2780.mtremand-grant-joinderofnewparty.frm